UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Derrick Parsons</u>

   v.            Civil No. 23-cv-528-LM-TSM

<u>FCI Berlin, Warden</u>

**REPORT AND RECOMMENDATION**

  Petitioner Derrick Parsons,[1] proceeding pro se, who is an inmate at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), filed a petition for habeas corpus relief under 28 U.S.C. § 2241. Specifically, Parsons asks the court to direct the Warden to apply time credits he asserts he earned under the First Step Act, 18 U.S.C. § 3632(d)(4), to advance his date for release to a residential reentry center or home confinement pursuant to 18 U.S.C. § 3624(b). The Warden moves for summary judgment, arguing that Parsons failed to exhaust administrative remedies and that, regardless, Parsons is ineligible for the requested relief. Parsons objects. For the following reasons, the district judge should grant the Warden's motion for summary judgment (doc. no. 4).

**BACKGROUND**

  The court derives the following undisputed facts from the evidence submitted by the parties in support of their submissions. <u>See</u> Fed. R. Civ. P. 56(c). Parsons is serving a 34-month total sentence for violating 18 U.S.C. § 922(g)(1) (possessing a firearm as a convicted felon) and for violating the terms of his supervised release relating to a prior offense. <u>See</u> <u>United States v. Parsons</u>, No. 22-CR-516, doc. no. 18 (S.D.N.Y. Feb. 24, 2023) (judgment imposing 30-month sentence for violating § 922(g)(1)); <u>United States v. Parsons</u>, No. 17-CR-767, Doc. no. 31

---

[1] Parsons's name on file with the Bureau of Prisons is "Derek Parsons." <u>See</u> doc. no. 4-3 at 1.

(S.D.N.Y. Mar. 29, 2023) (judgment imposing consecutive four-month sentence for violating terms of supervised release).  Parsons's 34-month sentence will be followed by a 2-year term of supervised release.  Parsons's present release-from-custody date is February 12, 2025, which includes good-conduct time under 18 U.S.C. § 3624(b).  See doc. no. 4-2 ¶¶ 8, 18-19.

During Parsons's present incarceration, the Bureau of Prisons ("BOP") evaluated Parsons for placement in prerelease custody – that is, placement in a residential reentry center or home confinement.  Id. ¶ 18.  As a result of that evaluation and consistent with the Second Chance Act, the BOP determined that Parsons should be placed in prerelease custody 91 to 120 days before his release date.  See 18 U.S.C. § 3624(c)(1) ("The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.").  Given Parsons's February 12, 2025 release date, he is set to be placed in prerelease custody on October 16, 2024.  Doc. no. 4-2 ¶¶ 18-19.

Aside from good-conduct time earned under § 3624(b), Parsons earned 60 days of time credits under the First Step Act, § 3632(d)(4), which may be used in appropriate circumstances to advance the date on which an inmate is transferred to prerelease custody (or to supervised release).  id. ¶ 9; doc. no. 4-4 at 1.[2]  In connection with the provisions of the First Step Act, the BOP

---

[2] In his objection, Parsons asserts that he earned 100 days of time credits under the First Step Act. Doc. no. 5 at 1.  The evidence that Parsons submitted in support of his objection does not support that assertion.  Regardless, any dispute about the number of time credits Parsons has earned is not material for the reasons discussed in this Report and Recommendation.

periodically assesses Parsons's recidivism risk.³  The BOP's most recent risk assessment for Parsons, from January 7, 2024, states a "high" risk of recidivism, and the BOP never assessed Parsons to be at a minimum or low risk of recidivism.  Doc. no. 4-2 ¶¶ 10, 12.  Because Parsons's recidivism risk score is "high," the Warden refuses to apply Parsons's earned First Step Act time credits to his placement in prerelease custody (or to advance the beginning of his term of supervised release).  Id. ¶ 12.

## LEGAL STANDARD

The Warden moves for summary judgment under Federal Rule of Civil Procedure 56.  "Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Gattineri v. Wynn MA, LLC, 93 F.4th 505, 509 (1st Cir. 2024) (quoting Fed. R. Civ. P. 56(a)).  A genuine factual dispute exists if "the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party," and a material fact is one "that has the potential of affecting the outcome of the case."  Hamdallah v. CPC Carolina PR, LLC, 91 F.4th 1, 16 (1st Cir. 2024) (internal quotation marks omitted).  In making that determination, the court draws all reasonable inferences in favor of the nonmoving party from the properly supported facts in the record.  Lech v. von Goeler, 92 F.4th 56, 64 (1st Cir. 2024).  Based on that view of the record, the court must determine whether the moving party has shown that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

---

³ The BOP uses the "PATTERN," which is an acronym for "Prisoner Assessment Tool Targeting Estimated Risk and Needs," to assess an inmate's recidivism risk.  Metcalf v. Warden, FCI Berlin, No. 23-cv-291-LM-AJ, 2023 WL 9197633, at *1-*2 & n.1 (D.N.H. Oct. 2, 2023).

**DISCUSSION**

In his motion for summary judgment, the Warden argues that Parsons did not administratively exhaust his remedies before bringing this § 2241 petition and that Parsons is not entitled to relief in any event because his "high" recidivism assessment score precludes application of his earned First Step Act time credits. Parsons responds that exhausting his remedies would be futile because any grievance would be moot before it could be resolved. He contends that the Warden should apply his earned time credits to advance the date for his transfer to prerelease custody.[4]

Generally speaking, the First Step Act permits federal prisoners to earn time credits if they successfully participate in certain programs aimed at reducing recidivism or otherwise engage in productive activities. See 18 U.S.C. § 3632(d)(4)(A), (C); Komando v. Luna, No. 22-cv-425-SE, 2023 WL 310580, at *4 (D.N.H. Jan. 13, 2023). These time credits may be applied to either advance the date on which the BOP transfers the prisoner to prerelease custody (that is, to a residential reentry center or home confinement) or advance the date on which the BOP releases the prisoner from custody to supervised release.[5] Komando, 2023 WL 310580, at *4 ("FSA time credits, when applied, advance the date when the prisoner will be placed in 'prerelease custody' (including home confinement or residential reentry facilities), or accelerate the date when the

---

[4] Considering the proximity of his release date and because the Warden prevails on the merits, the court does not discuss whether Parsons was required to administratively exhaust his claims prior to bringing his § 2241 petition. As this court noted in similar cases, the First Circuit has not addressed "whether the proximity of a prisoner's release date can provide grounds for the court to waive the exhaustion requirement" and "[o]ther courts have reached mixed results." Iler-Reyes v. Warden, FCI Berlin, No. 23-cv-553-SM-AJ, 2024 WL 1773616, at *3 (D.N.H. Apr. 3, 2024) (collecting cases).

[5] Time credits earned and applied under the First Step Act, § 3632(d)(4)(A), are distinct from the "good time" credits that a prisoner may earn under § 3624(b). Portocarrero v. Warden, FCI Berlin, No. 23-cv-120-SM, 2023 WL 3572791, at *1 (D.N.H. May 15, 2023).

4

prisoner will leave BOP custody to start a term of court-imposed supervised release."). First Step Act time credits, however, may only be applied to advance a prisoner's transfer to prerelease custody (or supervised release) if the preconditions under 18 U.S.C. § 3624(g) are met. § 3632(d)(4)(C) (stating that time credits earned under § 3632(d) "shall be applied toward time in prerelease custody or supervised release" and "[t]he Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release"). In this way, the First Step Act distinguishes between <u>earning</u> time credits and <u>applying</u> them to a sentence: time credits are earned for qualifying activities but they have no effect unless the prisoner meets § 3624(g)'s qualifications. <u>See</u> § 3632(d)(4)(C); <u>see also</u> 28 C.F.R. § 523.44 (describing how First Step Act time credits may be applied to prerelease custody or early transfer to supervised release).

Of relevance here, § 3624(g) limits qualification to prisoners whom the BOP determined to be a "minimum" or "low" recidivism risk. 18 U.S.C. § 3624(g)(1)(B); McCoy v. FCI Berlin, Warden, No. 22-cv-527-SE, 2024 WL 1348871, at *2 (D.N.H. Mar. 29, 2024); <u>see also</u> Parviz v. Barron, No. 2:23-CV-1407-JHC-DWC, 2024 WL 2884592, at *4 (W.D. Wash. May 17, 2024) ("Petitioner is not eligible to have the ETCs applied to her release date until she qualifies under the recidivism risk assessment. <u>See</u> § 3624(g)(1). At this time, Petitioner's recidivism risk level is high and she, therefore, cannot have FSA credits applied to her release date."). There is no genuine dispute that the BOP's most recent evaluation of Parsons's recidivism risk was "high." And because an inmate is not entitled to application of earned First Step Act time credits when his risk of recidivism is evaluated as "high," the Warden is entitled to judgment as a matter of law. <u>See</u> McCoy, 2024 WL 1348871, at *2.

**CONCLUSION**

For the foregoing reasons, the district judge should grant the Warden's motion for summary judgment (doc. no. 4).

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The objection period may be extended upon timely motion. Only those issues properly raised in a written objection are subject to review in the district court and any issues not preserved by a written objection are waived on appeal. Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted).

_____
Talesha L. Saint-Marc
United States Magistrate Judge

July 22, 2024

cc:   Derrick Parsons, pro se
      Counsel of Record